IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NICOLE F. MYERS | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. _____ |
| | § | [JURY DEMANDED] |
| | § | |
| MOTHERSWORK, INC. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, NICOLE F. MYERS, files her Original Complaint against MothersWork, Inc. and would respectfully show the Court as follows:

PRELIMINARY STATEMENT

1.      This is an action for permanent injunctive and declaratory relief, compensatory damages, punitive damages, costs and attorneys' fees sustained by plaintiff as a result of defendant's unlawful discrimination on the basis of plaintiff's gender in violation of Title VII of the Civil Rights Act of 1964, ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. §2000e(k), *et seq.*, and in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. §2615 ("FMLA");

JURISDICTION AND VENUE

2.      The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201 and 2202; Title VII and the principles of pendent jurisdiction.

3.      This action properly lies in the Southern District of Texas, Houston Division pursuant to 706(f)(3) of Title VII, 29 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §1391.

4. Declaratory, injunctive and equitable relief is sought pursuant to 42 U.S.C. §§ 2000e-5(f) and (g) and 29 U.S.C. §626(c). Costs and attorneys' fees may be awarded pursuant to 706(k) of Title VII and FED.R.CIV.P. 54.

## CONDITIONS PRECEDENT

5. Plaintiff has fulfilled all conditions precedent to the institution of this action under 42 U.S.C. § 2000(e). Plaintiff has exhausted her administrative remedies under Title VII.

6. On November 4, 2004, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which charge was amended on January 24, 2005 and December 2, 2005 to include additional, continuing unlawful conduct by defendant.

7. On September 15, 2006, the EEOC issued a Determination in favor of plaintiff, finding that MothersWork, Inc. had violated plaintiff's civil rights under Title VII.

8. On October 30, 2006, plaintiff requested a Notice of Right to Sue from the EEOC. Plaintiff received a Notice of Right-to-Sue from the Commission on November 6, 2006. Plaintiff's complaint was filed within ninety (90) days of receipt of the right-to-sue.

9. At all times relevant and material herein, Defendant has been and is an employer engaged in an industry affecting commerce, pursuant to §701(b) of Title VII of the Civil Rights Act of 1964 and employs more than fifty (50) regular employees.

## PARTIES

10. Plaintiff Nicole F. Myers is an adult female citizen of the United States and a resident of the State of Texas, who was employed by Defendant from April 21, 2003 until May 2, 2005.

11.     Defendant MothersWork, Inc. is a Delaware corporation, doing business as Mimi Maternity, which conducts retail sales within this judicial district at 1111 League Line Road, Conroe, Texas 77303.

## STATEMENT OF FACTS

12.     In April 2003, Nicole Myers (hereinafter "plaintiff" or "Mrs. Myers") was hired by MothersWork, Inc. as a District Manager. MothersWork, Inc. (hereafter referred to as "MWI") operates several different maternity-store retail chains, including Motherhood Maternity, Mimi Maternity, iMaternity and A Pea in the Pod.

13.     Plaintiff performed her job well despite being placed in a low-performing district. Plaintiff received good performance appraisals, merit-based raises in her salary and incentive-based bonus payments. In February 2004, Mrs. Myers was included on a list of Mothers Work, Inc. employees who were eligible for promotion. In July 2004, based upon her performance statistics, Mrs. Myers was the second highest ranked manager in her division. In both May and July 2004, plaintiff was named "District Manager of the Month." Mrs. Myers has extensive experience in the retail industry.

14.     On or about September 2, 2004, plaintiff advised her immediate supervisor, Tory Haywood, and Ann Marie Supinski, Director of Mimi Stores that she was pregnant. Mrs. Myers told Ms. Supinski and Mr. Haywood that her pregnancy would not interfere with the holiday retail season and that she (plaintiff) would continue to work so long as she was physically able.

15.     After plaintiff disclosed her pregnancy, the working atmosphere changed noticeably; management became more distant and less collegial and plaintiff's work was unduly and unfairly scrutinized. In mid-September, Mrs. Myers received a lower rating on her annual

3

performance appraisal than she had the prior year despite the fact that her district's sales figures were better than the previous year.

16. On October 14, 2004, while plaintiff was working in Dallas, several corporate representatives made a surprise visit to two of plaintiff's Houston stores. This surprise visit was unusual in that, on all occasions previously, plaintiff had been notified of dates for regional in-store inspections.

17. On October 21, 2004, Mrs. Myers received a voice-mail message directing her to call in for a telephone conference with Ms. Supinski and Mr. Haywood at 11:00 a.m. that day. During the conference, Ms. Supinski said, "You are incompetent to run the Dallas superstore and the 'combo' store," and that control of both stores would be transferred to the Motherhood division. Plaintiff was shocked by Ms. Supinski's statements, in light of her prior performance and accolades. Ms. Supinski directed Mr. Haywood to schedule a meeting with Mrs. Myers to place her on an Individual Development Plan ("IDP"). An IDP is an action plan for employees with performance issues. If an employee fails to complete the goals of the IDP, the employee is terminated.

18. Ms. Supinski added that Nicole Leddy, a different regional manager who was not plaintiff's supervisor, would possibly administer the IDP. Ms. Supinski and Mr. Haywood were aware, and it is well known within the company, that Mrs. Leddy has a personal grudge against Mrs. Myers as a result of plaintiff's hire to the position of District Manager at a time when Mrs. Leddy also desired the position. Mrs. Leddy's animosity has been so obvious that at a PPP meeting in July 2004, Scott Gerhard, Director of Stores for Motherhood, expressly instructed Mrs. Leddy to, "just let go of your personal grudge [against Nicole Myers]." Several witnesses

4

were present. Ms. Supinski's threat was the first indication to plaintiff that MWI intended to force her resignation.

19. That same afternoon, Mr. Haywood called Mrs. Myers to inform her that he would meet with her in Austin, Texas on October 29, 2004 to go over the IDP; however, this meeting never occurred.

20. Instead, on October 25, 2004, plaintiff received a telephone call from Craig A. Swartz, General Counsel for MWI, and Sharon Gottlieb, Senior V-P of Stores. Mr. Swartz initially stated that plaintiff's performance was poor and that she would be placed on an IDP, but then said that he and Mrs. Gottlieb had "a different approach" in mind.  Swartz admitted that he and Mrs. Gottlieb expected the IDP to result in plaintiff's termination, regardless of plaintiff's performance, but that instead of "going down the road to termination" Mrs. Myers could "part ways" with MWI; i.e., resign, which he and Mrs. Gottlieb strongly suggested. Mr. Swartz said that if Mrs. Myers agreed to resign MWI would pay her four weeks of severance in exchange for an "agreement."

21. During this conversation, Swartz directed plaintiff to immediately begin an indefinite leave of absence "to decide" if she (plaintiff) I would agree to resign. Swartz asked Gottlieb to confirm the leave of absence and then instructed Mrs. Myers that she was to leave all of her work materials, including her computer, at the office. Later, Mrs. Myers was requested to return keys to the Dallas superstore, which she did not have. Swartz's instructions evidenced that MWI did not intend plaintiff to return to her job.  Additionally, Swartz refused to confirm if plaintiff would be paid during this forced leave of absence.

22. After this phone conversation, Mr. Swartz e-mailed Mrs. Myers a severance agreement and general release, which MWI required Mrs. Myers to execute in order to receive

5

four weeks of her salary. The agreement contains a release of all claims against MWI, and virtually precludes plaintiff's ability to work in the retail industry anywhere in the U.S. for two (2) years. Plaintiff has no other professional experience than retail sales and management.

23. After plaintiff's constructive discharge as described above, Mrs. Myers learned that MWI has a habit, pattern and practice of pregnancy discrimination, as evidenced by charges of discrimination and lawsuits in several states, concerning facts nearly identical to those herein.

24. Plaintiff immediately sought advice regarding MWI's pregnancy discrimination and the threatened termination of her employment. As a result, on October 29, 2004, Swartz sent correspondence withdrawing MWI's severance offer and threatening to take "disciplinary action" against plaintiff.

25. On November 4, 2004, plaintiff filed her initial charge of discrimination with the EEOC; MWI and its counsel were notified of the EEOC charge. The following day, Swartz ordered that plaintiff return to work on November 8, 2004, which she did; however, she had been locked out of access to her computer and voice-mail. Plaintiff called Mr. Haywood at 8:00 a.m. to report she had no access. No one returned Mrs. Myers' call.

26. Ms. Supinski finally called plaintiff at noon, but did not correct the computer access. Ms. Supinski asked about plaintiff's projected work schedule and advised plaintiff that she (Supinski) was meeting with Swartz and would call plaintiff in 30 minutes. Ms. Supinski finally called again at 4:00 p.m. to verify plaintiff's work schedule, then informed plaintiff that she (Myers) would have computer and voice-mail the following day. Mr. Haywood never called.

27. On November 10, 2004 at the San Antonio store opening, Tory Haywood advised Mrs. Myers that he had resigned his employment following a meeting with Sharon Gottlieb shortly prior to plaintiff's return. Mr. Haywood informed Mrs. Myers that the other two district

6

managers in the region had already been advised by Mrs. Gottlieb of Mr. Haywood's departure, and that Mrs. Gottlieb had praised them for their good work. Mrs. Gottlieb did not contact plaintiff. Mr. Haywood informed plaintiff that his resignation was due in part to his objection to MWI's discrimination against her.

28. On November 11, 2004, Supinski and Scott Gerhard issued plaintiff's IDP. The expectations outlined in the IDP did not conform to plaintiff's job duties, or to the job duties and expectations of plaintiff's non-pregnant co-workers. The results demanded of Mrs. Myers exceed those of her co-workers. On November 12, 2004 MWI announced Shane Moss as plaintiff's acting Regional Manager, to replace Haywood.

29. On November 15, 2004, Supinski advised plaintiff that, despite plaintiff's status as an exempt salaried employee, MWI would not pay plaintiff during the forced leave of absence from October 25, 2004. Ms. Supinski told plaintiff that she (plaintiff) would have to use sick time or vacation time in order to receive a pay check, even though Supinski and Swartz had ordered plaintiff to take the time off to consider MWI's severance offer. Ms. Supinski then said that plaintiff would receive regular pay for October 25-28, because Supinski had directed plaintiff to take those days to "think about it;" however, MWI would not pay plaintiff for the other days missed, even though Mrs. Myers was not allowed to return to work until November 8. Ms. Supinski told plaintiff that she (Supinski) would talk to MWI's attorney (Swartz) and get back to me promptly; however, Ms. Supinski did not contact plaintiff again until 2:30 p.m. November 17, 2004, by e-mail. After talking to MWI's attorney, Ms. Supinski confirmed in writing that plaintiff would have to take sick time or vacation time; she would not receive her salary for October 29-November 5 (6 days). Ms. Supinski also wrote that plaintiff could receive

her salary for the 6 days, if she signed the release agreement and non-compete previously proposed.

30. Plaintiff's paycheck should have been direct deposited on October 18; however, she received nothing. Plaintiff contacted payroll and was told she should have been paid, and that a supervisor would call her. Instead, Swartz contacted plaintiff directly, even though he knew plaintiff was represented by counsel. Swartz questioned plaintiff about calling payroll; Mrs. Myers told him she did not receive a check, as promised by Supinski. Swartz said plaintiff would be paid for one day only, contrary to Supinski's written representation. As a salaried employee, Mrs. Myers was entitled to full pay.

31. On December 10, 2004, plaintiff's obstetrician restricted her from flying during the 3rd trimester of her pregnancy, effective 12/15/04. Mrs. Myers immediately notified her new supervisor, Shane Moss. On December 13, 2004, MWI forced plaintiff to sign a release for medical information, and began interrogating plaintiff's physician and plaintiff regarding her pregnancy. That same day, Shane Moss issued an updated IDP for plaintiff.

32. Swartz continued to contact plaintiff directly, without authorization from counsel. MWI continued to withhold plaintiff's paycheck for the forced leave period, even after plaintiff requested the payment as sick time earned. On December 21, Swartz demanded that plaintiff extend the medical release until December 31st. On December 29, MWI directed plaintiff to have her doctor contact HR, or to see another physician. Plaintiff's doctor's office called plaintiff to complain of MWI's inappropriate medical questions and deprecating comments.

33. The documentation MWI provided to plaintiff in December 2004 consisted of an authorization for release of health information. No FMLA forms, application materials, designation or other documentation was provided.

34. On January 3, 2005, MWI informed plaintiff that her employment and pay would be reduced to 3 days per week beginning 01/09/05 because of her travel restriction, even though plaintiff was able to work. Plaintiff expected written notice by 01/07/05, which she did not receive. On January 10th MWI sent plaintiff a third copy of the non-compete agreement, purportedly delivered nationally; however, plaintiff has been unable to confirm that other managers received the document. Later that day MWI/Swartz advised plaintiff that, effective 01/16/05, she would not be allowed to return to work at all until after her travel restrictions were lifted, despite plaintiff's physician's approval. Plaintiff did not receive her salary during this second involuntary leave of absence, her position was filled, no other comparable position was offered to plaintiff, and her FMLA leave time was reduced without justification.

35. Mrs. Myers was forced against her objection and that of her physician to take involuntary leave beginning January 16, 2005. Despite several requests, Mrs. Myers was not provided FMLA documentation.

36. On the date of plaintiff's forced leave, January 16, 2005, her position, Mimi District 2 Manager, was assigned temporarily to one of plaintiff's subordinates, a store manager; however, MWI posted the position for hire the very next day (January 17, 2005).

37. On March 2, 2005, plaintiff again contacted Donna Dougherty, and copied her new Regional Manager, Larry Quan, regarding her expected delivery and the necessary FMLA paperwork. Plaintiff did not receive the requested information. Mrs. Myers' son was born March 15, 2005.

38. On March 22, 2005, plaintiff again requested the FMLA documents from MWI. Plaintiff advised MWI that she would be returning to her position after her maternity leave. Plaintiff notified MWI of her expectation to return to her prior position, and MWI's obligation to

9

hold that same position for her return. MWI refused to provide the FMLA and other benefits paperwork, or pay Mrs. Myers her salary.

39. Mrs. Myers attempted to return to work in a timely manner; actually, in fact, several weeks early. On April 18, 2005 Mrs. Myers notified MWI that she would return to her position May 1, 2005, and requested instructions regarding her return to work, her company access, computer, duties, etc.

40. From January 16th through May 1, 2005, MWI listed plaintiff's position as open for hire, being filled temporarily by plaintiff's subordinate. On May 2, 2005, MWI posted plaintiff's position as filled by a new hire, in training.

41. MWI has admitted in writing it failed and refused to hold plaintiff's prior employment position pending completion of her eligible FMLA benefits period. Mrs. Myers was not restored by MWI to the position of employment held by her when the forced leave of absence commenced, nor was she restored to an equivalent position with equivalent terms and conditions of employment.

42. During the same time frame, a similarly situated colleague, Anna Potts, having also been placed on flight restrictions during her 3rd trimester, was allowed to temporarily assume a store manager position, while her (Potts') subordinate (the store manager) temporarily filled the District Manager job. Mrs. Potts remained an active employee, receiving full salary and benefits. Unlike plaintiff, Mrs. Potts had not filed a charge of discrimination against MWI.

43. MWI forcibly and unnecessarily removed plaintiff from the performance of <u>any</u> employment functions, cutting off plaintiff's income and causing severe financial hardship for plaintiff and her family.

44.     MWI refused to reinstate plaintiff to her former position, or to provide an equivalent position.  Plaintiff was involuntarily terminated, by constructive discharge, effective May 1, 2005.

## CAUSES OF ACTION

*Gender Discrimination*

45.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 44 above.

46.     Plaintiff is a member of a protected class under Title VII; she is female.  At the time of the actions complained of herein, plaintiff was pregnant, and had claims against defendant for gender/pregnancy discrimination and retaliation pending with the EEOC.

47.     Defendant treated plaintiff disparately to her colleagues, as more particularly described above, in regard to the conditions of employment, job duties, discipline, raises, performance evaluations and compensation.

48.     Defendant removed plaintiff from her hired-for position, and replaced her with a person outside of the protected class.  Thereafter, defendant unlawfully terminated plaintiff.

49.     Defendant discriminated against plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2, and the Pregnancy Discrimination Act of 1978, 42 U.S.C. §2000e(k), *et seq.*

50.     Defendant's reasons for the disparate treatment, job transition, replacement and termination were pretext for unlawful discrimination.

51.     As a result of the unlawful and intentional discrimination by defendant, plaintiff has suffered and continues to suffer damage to her professional reputation, lost wages and future

earning capacity.  Plaintiff has also suffered damage to her personal reputation, loss of enjoyment of life, and severe mental anguish.

52.	Defendant's acts of discrimination were performed with malice and reckless indifference to plaintiff's protected civil rights.

53.	In addition, after plaintiff filed her internal grievances and EEOC charges, defendant failed to prevent or remedy additional acts of discrimination, and in so doing ratified both the discrimination and the retaliation against Mrs. Myers for making those complaints.

*FMLA Violations*

54.	Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 44 above.

55.	Because of Mrs. Myers' pregnancy and travel restrictions, and because of Mrs. Myers' pending EEOC charge of discrimination, MWI forced Mrs. Myers to take a leave of absence, but failed to allow Mrs. Myers the federally mandated medical leave and rights provided under FMLA.  Despite numerous written and verbal requests by Mrs. Myers, her physician and her counsel, MWI failed and refused to provide Mrs. Myers with the necessary FMLA documentation.  During the FMLA period, MWI threatened Mrs. Myers with termination of her employment, eliminated her income and benefits, and thereafter, terminated her from employment upon her notice of return from the leave of absence.  In addition, MWI made prohibited inquiries of plaintiff and her physician regarding plaintiff's medical condition.

56.	Plaintiff would show that cessation of employment and cancellation of entitlement to employment benefits during an FMLA leave is a *per se* violation of the statute.

## DAMAGES

57.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged.  Plaintiff is now suffering and will continue to suffer irreparable injury from her treatment by defendant unless this Court enjoins MWI.

58.     Plaintiff's compensation from MWI consisted of a yearly salary of $67,808.00, $6,000 yearly car allowance, $1,800.00 yearly cell phone allowance, gas/mileage allowance averaging $250/year (for personal use), and medical/dental benefits valued at ~$6,800.00 per year, plus potential goal-achievement bonus allowance up to $6,000.00 per year, potential $1,200.00 management referral bonus, life insurance, stock options/contributions and other benefits.  Mrs. Myers has suffered a loss of comparable wages and benefits in excess of $168,495.00 in the past, plus miscellaneous related damages, for which she seeks recovery.

59.     Despite past and ongoing diligent efforts, Nicole Myers has been unable to secure substantially comparable employment, compensation and benefits, for which she seeks damages into the future.

60.     Plaintiff has suffered in the past, and will continue to suffer in the future, pecuniary losses as a direct result of Defendant's discrimination and unlawful acts.

61.     Defendant engaged in discrimination against Plaintiff with malice or reckless indifference to Plaintiff's rights under Title VII, for which she seeks punitive damages.

62.     Plaintiff has suffered physical and mental injury and mental anguish as a result of the defendant's intentional and malicious acts, for which she seeks compensatory damages.

## ATTORNEY'S FEES AND COSTS

63. As a result of Defendant's actions, as alleged above, plaintiff has been forced to retain the undersigned to represent her in prosecuting these claim, for which she seeks recovery of reasonable and necessary attorneys' fees, pursuant to 706(k) of Title VII and FED.R.CIV.P. 54.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff hereby requests a trial by jury and prays this Honorable Court:

A. Enter a declaratory judgment that the acts and practices of defendant complained of herein are in violation of the laws of the United States;

B. Reinstate plaintiff to her former position with MWI and grant plaintiff a permanent injunction restraining defendant, its agents, assistants, successors, employees, attorneys, assigns and all acting in cooperation with it or at its direction, from further engaging in the acts and practices which discriminate and retaliate against plaintiff;

C. Grant plaintiff judgment against defendant for back pay, front pay and all benefits to which she is and was entitled;

D. Grant plaintiff judgment for compensatory damages against defendant;

E. Grant plaintiff judgment for punitive damages against defendant;

F. Grant plaintiff judgment for pre- and post-judgment interest, as allowed by law;

G. Grant plaintiff her costs incurred in prosecution of this action;

H. Grant plaintiff her reasonable attorneys' fees and expenses incurred herein; and

I. Grant plaintiff such other relief that this Court may deem just and proper.

|  | Respectfully submitted, |
|---|---|
| OF COUNSEL: | _____/s/_____<br>Sheila R. Haley<br>Texas Bar No. 08661450 |
| **CORDELL & HALEY, L.L.P.**<br>9800 Northwest Freeway, Suite 216<br>Houston, Texas 77092-8831 | Christine L. Cordell<br>Texas Bar No. 00785786<br>9800 Northwest Freeway, Suite 216<br>Houston, Texas 77092-8831<br>Telephone:  713.522.2488<br>Telecopier:  713.522.2484<br><br>ATTORNEYS FOR PLAINTIFF<br>NICOLE F. MYERS |