UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NICOLE F. MYERS, | § | |
| _Plaintiff,_ | § | |
| | § | |
| v. | § | Civil Action H-07-0409 |
| | § | |
| MOTHERS WORK, INC., | § | |
| _Defendant._ | § | |

## SUMMARY JUDGMENT OPINION AND ORDER

This employment dispute is before the court on defendant Mothers Work, Inc.'s motion for summary judgment (Dkt. 36). Because there are genuine issues of fact material to plaintiff's claims of pregnancy discrimination, retaliation, and FMLA violations, defendant's motion is denied.

## I.     Background

Plaintiff Nicole Myers was hired in April 2003 as a district manager for Mothers Work, Inc., a manufacturer and retailer of maternity clothes. She claims to have done her job well, and Mothers Work apparently endorsed that view (at least for a time) by naming her the district manager of the month in May and July 2004. According to Myers, things began sliding downhill in September of that year, after she told her superiors of her pregnancy.

Later that month, Myers was given a significantly lower performance evaluation than she received the previous year. Mothers Work also placed Myers on an Individual Development Plan (IDP) for the purpose of curing deficiencies it now found in her performance. Two stores in her district were taken away and transferred to another division.

The next month Mother's Work offered her a severance package in exchange for her resignation and release of all claims, and placed her on a two-week unpaid leave (October 25 to November 8) to allow her to "consider" the offer.  Myers rejected the severance offer, and before returning to work on November 9 filed a charge of pregnancy discrimination with the EEOC.

Myers's doctor restricted her from flying effective December 15; even so, she did her job for several weeks, communicating with stores in her district electronically instead of in person.  On January 16 Mothers Work placed her on full unpaid leave until her travel restrictions were lifted.  The following week Myers amended her EEOC charge to add a retaliation claim and more instances of pregnancy discrimination.

A few weeks after her child was born on March 15, Myers informed Mothers Work that she intended to return to work on May 1.  In late April, Mothers Work informed Myers that she could not return to her same job, but would be placed as a district manager in a different division.  Myers declined to accept the offered position, which covered a different geographic territory requiring more extensive travel, among other things.  On December 2, 2005 Myers again amended her EEOC charge to allege additional acts of discrimination and add a complaint for constructive discharge.

The EEOC determined that Mothers Work presented no credible evidence to contradict Myers's claims, and on September 15, 2006 issued a determination in Myers's favor.  Myers filed this federal lawsuit on January 30, 2007.

## II.    **Summary Judgment Standards**

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002).

The standard for granting summary judgment in Title VII cases is by now too familiar to warrant extended recitation. *Reeves v. Sanderson Plumbing Prods., Inc.*, succinctly summarizes the appropriate inquiry:

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

530 U.S. 133, 148-49 (2000). The court must draw all reasonable inferences in favor of the non-movant, and disregard all evidence favorable to the moving party that the jury is not required to believe. *Id.* at 150-51. Trial courts should not treat discrimination differently than other ultimate questions of fact for purposes of Rule 50 or 56. *Id.* at 148.

### III.   <u>Analysis</u>

Myers asserts claims for pregnancy discrimination and retaliation in violation of Title VII, as well as violation of her rights under the FMLA.   Mothers Work moves for summary judgment on all claims for various reasons, discussed below.[1]

### A.      Exhaustion

Mothers Work first argues that certain of Myers's discrimination claims — her unpaid January leave and the failure to reinstate her to the same district manager position after maternity leave — were not the subject of a timely charge of discrimination and therefore are not properly before this court. *See* 42 U.S.C. § 2000e-5; *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109-115 (2002); *Taylor v. Books A Million, Inc.*, 296 F.3d 376 , 378-79 (5th Cir. 2002).  In federal court, Title VII claims are limited to those claims that "could reasonably be expected to grow out of the initial charges of discrimination." *Martineau v. Arco Chemical Co.*, 203 F.3d 904, 913 (5th Cir. 2000); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).

---

[1]      In its reply, Mothers Work addresses causes of action for discriminatory pay and retaliatory hostile work environment.  Myers did not plead such causes of action, so they are not before this court and need not be addressed.

4

The very detailed EEOC charge amendments filed by Myers on January 24 and December 2, 2005, easily satisfy the *Sanchez* standard.[2]  Mothers Work's exhaustion arguments are baseless.

## B.        Pregnancy Discrimination

***Adverse employment action*.**  Mothers Work argues that Myers was not subjected to an actionable adverse employment action.  This argument blinks reality.

Myers was suspended[3] for two weeks without pay in October 2004, for the stated purpose of giving her time to consider a severance package presented to her by a company vice president.  Myers was effectively suspended again on January 15, 2005, when she was involuntarily placed on leave due to her doctor's restriction on flying.  This leave was also unpaid (although her salary was partially reimbursed by short-term disability insurance).[4]  Suspensions without pay are adverse employment actions.  *McClure v. Career Sys. Dev.*

---

[2]  In both amended charges Myers states that effective January 16, 2005, "I would not be allowed to return to work at all until after my travel restrictions were lifted, despite my physician's approval.  I did not receive my salary during this second involuntary leave of absence, my position was filled, no other position is available to me, and my FMLA leave time was purportedly reduced against my objection and without justification."D. Ex. G, ¶ 22; D. Ex. O, ¶ 22.  Also in the December 2005 charge, Myers asserts "[Mothers Work] refused to reinstate me to my former position, or to provide an equivalent position."  These statements were more than sufficient to trigger an EEOC investigation into these matters.

[3]  Mothers Work avoids the term suspension, declaring that it "permitted Myers to take several days off to determine whether she wanted to resign and take the severance, or stay with Mothers Work and work to improve her performance."  Myers testimony (which this court is bound to accept for summary judgment purposes) is that she was "directed" to take this leave of absence, which is by definition a suspension.

[4]  According to D. Ex. J ¶ 12, Myers was approved for STD benefits from January 24 through April 15, 2005.

*Corp.*, 447 F.3d 1133, 1137 (8th Cir. 2006); *Whittaker v. Northern Ill. Univ.*, 424 F.3d 640, 647 (7th Cir. 2005); *cf. LeMaire v. Louisiana Dep't Transp. and Dev.*, 480 F.3d 383, 393 (5th Cir. 2007) (retaliation).

Admittedly, Myers' complaint points to other actions which, standing alone, might not be actionable under Title VII. Examples include the poor performance review given in September 2004 and the IDP on which she was placed in October 2004 for deficient performance. Fifth Circuit precedent was not entirely consistent on the actionability of performance reviews[5] even before the Supreme Court's 2006 decision in *Burlington Northern.* There is no need to venture into that thicket now, however, because at the very least these actions are admissible as background evidence related to the unpaid suspension, which is actionable.

Although the issue of constructive discharge was mentioned in Myers' EEOC charge, counsel for plaintiff conceded at oral argument that she was not asserting constructive discharge for purposes of her Title VII discrimination and retaliation causes of action.[6] This

---

[5]     *Compare Vaughn v. Edel,* 918 F.2d 517, 522 (5th Cir. 1990) (race-based failure to counsel black employee for unsatisfactory work violated Title VII; "whether . . . decisions ultimately benefitted or harmed Vaughn is irrelevant") *with Felton v. Polles*, 315 F.3d 470, 488 (5th Cir. 2002) ("placement on a performance improvement plan is not, by itself, an ultimate employment decision"), *abrogated by Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 68 (2006).

[6]     Myers does claim that the failure to reinstate her to her previous position in May 2005 violated the prescriptive rights guaranteed her under the FMLA, as discussed *infra*. However, this statutory claim does not require a showing of constructive discharge for liability purposes.

is just as well, because the circumstances of this case would not appear to support a finding of intolerable working conditions necessary to support construct discharge. *See Webb v. Cardiothoracic Surgery Associates*, 139 F.3d 532, 539 (5th Cir. 1998); *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998). Of course, the circumstances of Myers' separation from employment are relevant to her FMLA failure to reinstate claim, as discussed below.

*__Job qualification__*. Another red herring is Mothers Work's contention that Myers was not qualified for the district manager position as of December 15, 2004 when her doctor prohibited her from flying. This medical restriction, a common and temporary limitation directly related to pregnancy, did not prevent Myers from performing her job during the next month. While it is undisputed that the district manager position required travel, there is at least a fact question whether Myers could have continued to perform her duties on a temporary basis without *flying*.[7]

*__Disparate treatment__*. Contrary to Mothers Work's argument, Myers has presented more than sufficient evidence to reach a jury on her pregnancy discrimination claim. A reasonable juror could readily infer that the dramatic downgrade in Myers' performance evaluations immediately after her pregnancy announcement was not mere happenstance, but the product of discriminatory intent. This discriminatory inference is bolstered by acting regional manager Brandy Cudd, who testified that non-pregnant district managers in her

---

[7]     Declaration of Myers, P. Ex. 1, ¶ 31-32. Mothers Work's objections to Myers's declaration are overruled.

division received better evaluations than Myers even though their performance was worse.[8] This evidence of disparate treatment, if believed by the jury, undermines the performance-related reasons articulated by Mothers Work, and could well support a finding of pretext for unlawful pregnancy discrimination.

Summary judgment on the pregnancy discrimination claim is denied.

## C.   Retaliation

Similarly, Myers has presented sufficient evidence to warrant an inference that Mothers Work placed her on involuntary unpaid leave in January in retaliation for her November EEOC charge. The timing itself is at least somewhat suspicious. *Swanson v. General Serv. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) ("close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation."); *LeMaire v. Louisiana Dept. of Transp. and Dev.*, 480 F.3d 383, 390 (5th Cir. 2007) ("The timing of the suspension – approximately two weeks after LeMaire's report of harassment – suggests a causal connection.").

The suspicious timing is bolstered by evidence of disparate treatment. During this same time, another pregnant district manager who had not filed an EEOC charge was treated more favorably. When Annie Potts was restricted from flying during her third trimester, she swapped positions with a store manager in her region. She retained her district manager

---

[8]     Declaration of Brandy Cudd, P. Ex. 2, ¶ 23. Mothers Work's objections to Cudd's declaration are overruled.

8

salary and benefits while she was a store manager, even though another employee was temporarily performing her district manager duties.[9] This evidence is sufficient to create a jury issue on Myers' retaliation claim.

## D.     Family Medical Leave Act

The FMLA entitles an eligible employee to 12 weeks unpaid leave for a serious health condition such as pregnancy.  29 U.S.C. § 2612(a)(1).  After a qualifying absence, the employee  must be restored either to the same position or to an equivalent position with equivalent pay, benefits, terms, and conditions. 29 U.S.C. § 2614(a)(1).  The gist of Myers FMLA claim is that she was denied reinstatement to her old job or its equivalent.[10]

Mothers Work argues that it was not obligated to hold open Myers position (or its equivalent) because she exhausted her 12 week FMLA leave as of April 15, 2005, and did not offer to return to work until May 1, 2005.  Alternatively, Mothers Work argues that although the district manager position offered was in a different division, it was equivalent to her previous position for FMLA purposes.  While either of these defenses might be tenable at trial, both rest on disputed issues of material fact which cannot be resolved on summary judgment.

---

[9]     Amended Declaration of Patricia Marra, D. Ex. L, ¶ 8; Declaration of Brandy Cudd, P. Ex. 2, ¶ 43-47.

[10]     Myers also asserts various subsidiary FMLA claims, *i.e.*  that Mothers Work interfered with her FMLA rights by not providing requested documentation regarding her FMLA leave, and by making prohibited inquiries of plaintiff and her physician regarding her medical condition. But the heart of her FMLA claim is denial of reinstatement to her old position.

Mothers Work's exhausted leave argument presumes that the FMLA leave clock began to run on January 16, 2005, when Mothers Work forced her to take leave, citing her travel restrictions. But not every leave triggers FMLA protections. *Willis v. Coca Cola Enter., Inc.*, 445 F.3d 413, 419 (5th Cir. 2006). It is an employer's duty to designate leave as FMLA-qualifying. *Id.* Federal regulations in place at the relevant time required employers to provide individualized notice that a leave was designated by the employer as FMLA leave. *Downey v. Strain*, 510 F.3d 534, 541 (5th Cir. 2007) (relying on 29 C.F.R. § 825.208(a)).

Myers never designated January 16 as the start date for her FMLA leave, and there is no contemporaneous documentation that Mothers Work did either. Myers further contends that, despite repeated requests, she was never given any FMLA documentation, and thus never had notice that her FMLA rights might expire on April 15, 2005. Had she been given prior notice of Mothers Work calculation of her FMLA deadline, it is reasonable to infer that Myers might have made different arrangements to meet the deadline. On this record a jury might reasonably conclude that Mothers Work deliberately kept Myers in the dark about her FMLA status in order to escape its reinstatement obligations. These disputed facts preclude summary judgment based on a theory of exhausted FMLA leave.

As for the equivalent position defense, Mothers Work relies on the April 28, 2005 letter from Swartz to Myers's counsel stating that "the position to which we are expecting Nicole to return is the same District Manager position that she had before she took leave with

10

her medical restrictions."[11]  But Swartz's letter is hardly conclusive, and glosses over the facts that the offered job was in a different division with a substantially different territory and arguably more onerous travel requirements.  Swartz's letter also says that the position was not temporary, but Patricia Marra, director of stores for the relevant division, confirmed that the previous occupant of that position was out on maternity leave.[12]  Unquestionably, there are genuine issues of material fact regarding job equivalence.

For these reasons summary judgment is not appropriate on the FMLA claim..

IV.    **Conclusion**

Mothers Work's motion for summary judgment (Dkt. 36) on Myers's pregnancy discrimination, retaliation, and FMLA claims is denied.

Signed at Houston, Texas on March 2, 2009.


_____
Stephen Wm Smith
United States Magistrate Judge

---

[11]    D. Ex. N.

[12]    D. Ex. M.

11